UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NICOLE VINCI, individually and on behalf of all others similarly situated, ) ) ) | |
| Plaintiff, ) | Case No. 1:17-cv-01447 |
| v. ) ) | Judge Manish S. Shah |
| BEENVERIFIED, INC., a Delaware corporation d/b/a PEOPLELOOKER, ) ) ) | |
| Defendant. ) | |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Plaintiff Nicole Vinci attempts to ensnare Defendant BeenVerified with a radical and unwarranted expansion of a well-established Illinois statute. Plaintiff claims a common method of Internet advertising violates her right of publicity, but neither the language of the statute nor the case law support Plaintiff's unprecedented interpretation. Moreover, Plaintiff's attempt to extend the right of publicity would violate the First Amendment.

Plaintiff claims that the mere display of a name in a sponsored link in response to a search request violates the Illinois Right of Publicity Act. 765 ILCS 1075/1-60 ("IRPA"). No one in Illinois has ever prevailed on such a claim or (to the best of BeenVerified's knowledge) even attempted to bring such a claim, and with good reason. The Complaint founders at the most basic level, because Plaintiff cannot allege that her identity was used, much less misappropriated. Plaintiff conflates name with identity in alleging that her name was wrongfully used. That fundamental flaw dooms Plaintiff's IRPA claim. In addition, the alleged use did not involve an endorsement, which is the basis of a right of publicity claim. Even if Plaintiff could somehow show that her identity was misappropriated, BeenVerified's alleged use would nonetheless fall

within the protection IRPA extends to the advertising of content that is exempt under IRPA's "book" and "non-commercial" use exemptions.

In addition, the content of BeenVerified's public records reports is entitled to First Amendment protection, and advertising for that content also is privileged. Plaintiff seeks an application of IRPA that is unconstitutional on multiple levels. Finally, Plaintiff's attempt to turn garden-variety paid search results into multiple one thousand dollar violations runs squarely into the protections provided by Section 230 of the Communications Decency Act ("CDA"). None of these shortcomings are curable, and all are fatal. BeenVerified therefore respectfully requests that this Court dismiss the Complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

## STATEMENT OF FACTS

BeenVerified provides reports based upon information compiled from public records, including criminal records, property records, and contact information (the "Reports"). (Compl. ¶ 1.) Users obtain these Reports for people based on individual names, phone numbers, email addresses, and property addresses." (BeenVerified "Fact Sheet.")[1] Consumers have access to the aggregated information in the Reports pursuant to a subscription model, just as a consumer would subscribe to other sources of information. (Compl. ¶¶ 15, 16.) "BeenVerified's mission is to make public records easy, affordable, and accurate for everyone," and "BeenVerified has alleviated the need to pay hundreds of dollars, visit thousands of county clerks, and search millions of websites to find the public records you need." (BeenVerified, "Our Data.")

---

[1] Plaintiff cites to BeenVerified's "Fact Sheet" and "Our Data" summary in her Complaint. (Compl. nn.1 & 2.) Copies are attached hereto as Exhibits A and B, respectively. This Court may take judicial notice of those materials. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 568 n.13 (2007) (stating that court "was entitled to take notice of the full contents of the published articles referenced in the complaint, from which the truncated quotations were drawn"); *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.").

2

Plaintiff brings a single claim for violation of IRPA on behalf of herself and a putative class. Plaintiff claims the name "Nicole Vinci" was served in response to a search for "Nicole Vinci" on Bing. (Compl. ¶ 22.) By its terms, this search was for any "Nicole Vinci," not just the Plaintiff. Plaintiff claims this search generated a sponsored link that stated "We Found Nicole Vinci" (the "Sponsored Link"). (*Id.*) According to Plaintiff, the Sponsored Link was generated via a process called dynamic keyword insertion. (*Id.* ¶¶ 3, 23, 24.) Plaintiff acknowledges that dynamic keyword insertion simply takes the letters and words that a user typed into an Internet search and places them in a generic advertisement. (*Id.* ¶ 23.)

Plaintiff also alleges that "[o]nce a person clicks on one of the advertisements, BeenVerified directs him or her to PeopleLooker.com."[2] (*Id.* ¶ 25.) According to Plaintiff, an individual searching on BeenVerified "ultimately" gets served a screen that includes an offer to purchase a subscription that includes additional information about an individual. (the "Data Screen") (*Id.* ¶ 25.) As Plaintiff hints through the use of the word "ultimately," several intervening screens come between the Sponsored Link and the Data Screen. Because Plaintiff includes in her Complaint screenshots of the first and last steps of the process (the Sponsored Link and the Data Screen), other steps in that process are also cognizable on a motion to dismiss.[3] Screenshots of two intermediate steps from the PeopleLooker website are attached hereto as Exhibit C. These screenshots show that, if a user clicks on a Sponsored Link, the search

---

[2] Plaintiff's allegation is incorrect, although the error is not pertinent here. An individual searching within BeenVerified's website stays within that website and would not be re-directed to PeopleLooker for the Data Screen. Plaintiff's web excerpts therefore reflect two different searches.

[3] The Court can consider the intervening webpages because the Sponsored Link and the Data Screen are included in Plaintiff's Complaint and are central to her claim. *188 LLC v. Trinity Indus. Inc.*, 300 F.3d 730, 735 (7th Cir. 2002) ("The purpose of the exception is to prevent parties from surviving a motion to dismiss by artful pleading or by failing to attach relevant documents.").

results are returned on a national level[4]. This is true, even if a user searched, for example, "Nicole Vinci, Chicago." The screenshot of the search results shows 27 "Nicole Vincis" in the United States and eight "Nicole Vincis" with an Illinois address.

Critically, Plaintiff does not claim that she is the "Nicole Vinci" referenced in the Sponsored Link or even that she is the only "Nicole Vinci" in the United States or the State of Illinois. As shown above, Plaintiff could not, in good faith, make this claim because there are multiple "Nicole Vincis." Instead, she states that the Sponsored Link displayed "her name" and her "full name." (*Id.* ¶¶ 29, 30.) Plaintiff does not mention, however, that the Sponsored Link also displayed the name of every Nicole Vinci in the United States. Finally, and importantly, Plaintiff does not allege that the Sponsored Link at issue used her "identity."

## STANDARD OF REVIEW

A district court may grant a motion to dismiss for failure to state a claim under Rule 12(b)(6) if it is clear that no relief can be afforded to a plaintiff based on the allegations set forth in the complaint. *See Evans v. Lederle Lab.*, 167 F.3d 1106, 1107 (7th Cir. 1999). In evaluating a motion to dismiss pursuant to Rule 12(b)(6), a court "must accept as true all the plaintiff's well-pleaded factual allegations and the inferences reasonably drawn from them." *Gibson v. Chicago*, 910 F.2d 1510, 1520-21 (7th Cir. 1990) (citing *Yeksigian v. Nappi*, 900 F.2d 101, 102 (7th Cir. 1990)). The court, however, need not accept inferences unsupported by factual allegations in the complaint or the plaintiff's legal conclusions. *See Zimmerman v. Tribble*, 226 F.3d 568, 572 (7th Cir. 2000). The plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Claims that are merely "conceivable" cannot proceed to discovery. *Id.* at 570. Similarly, if the alleged facts suggest only

---

[4] A visitor to the PeopleLooker site also sees the following message: "We look up all people named Nicole Vinci." (*See* Ex. C.)

the "possibility of misconduct," the complaint should be dismissed. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Dismissal is appropriate when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). Finally, courts in the Northern District have frequently granted motions to dismiss right of publicity claims. *See Nieman v. VersusLaw, Inc.*, 512 F. App'x 635, 636 (7th Cir. 2013) (upholding dismissal of right of publicity claim); *Thompson v. Getty Images (US), Inc.*, 2013 U.S. Dist. LEXIS 91828, at *1 (N.D. Ill. 2013) (dismissing right of publicity claim); *Hooker v. Columbia Pictures Indus., Inc.*, 551 F. Supp. 1060, 1062 (N.D. Ill. 1982) (dismissing misappropriation claim under 12(b)(6)).[5]

## ARGUMENT

### I. Plaintiff Has Not Pled an IRPA Claim as a Matter of Law

#### A. Unable to show use of her "Identity" or an endorsement, Plaintiff fails to plead a violation of IRPA

Plaintiff's IRPA claim is fundamentally flawed. According to Plaintiff, "[b]y using Illinois residents' full names in its paid advertisements without their consent for its commercial gain, BeenVerified violated—and continues to violate—the Illinois Right of Publicity Act . . . ." (Compl. ¶ 6.) The use of a name, however, is not a violation of IRPA. Instead, use of a specific individual's identity triggers liability under IRPA. Under IRPA, "[a] person may not use an individual's identity for commercial purposes during the individual's lifetime without having obtained previous written consent . . . ." 765 ILCS 1075/30(a). "Identity" is defined in IRPA as "any attribute of an individual that serves to identify that individual to an ordinary, reasonable viewer or listener . . . ." *Id*. at 1075/5. Such identifying characteristics can include name,

---

[5] Although IRPA supplanted the common-law right of publicity, pre-IRPA decisions are useful to interpret its provisions. *See Villalovos v. Sundance Assocs.*, 2003 U.S. Dist. LEXIS 387, at *9-10 (N.D. Ill. Jan. 13, 2003) ("[T]he Court examines both the statutory language and common law to determine the scope of the appropriation tort.").

5

signature, photograph, image, likeness, or voice but only so long as they serve to identify a specific individual. *Id.*

Plaintiff does not claim (and cannot claim) that BeenVerified used her identity. Plaintiff further erroneously states that "[t]he Act protects individuals from unauthorized use of any of their attributes, including but not limited to, their names, signatures, photographs, images, likenesses, or voices . . . ." (Compl. ¶ 12 (emphasis in original).) This is plainly wrong. IRPA protects an individual's identity, and the examples listed are simply ways of establishing identity. They are not an individual's identity.

The distinction between "name" and "identity" is more than just semantics. A name can be an identity, but it does not necessarily identify a specific individual. Here, simply displaying the name "Nicole Vinci" is not tantamount to using Plaintiff's identity. Plaintiff alleges nothing to show that the name appearing in the Sponsored Link would identify her to an ordinary, reasonable viewer. In this regard, Plaintiff's claim is similar to that of an Illinois resident named T.J. Hooker who claimed the television show "T.J. Hooker" misappropriated his identity. *Hooker*, 551 F. Supp. at 1061. As the court noted in dismissing the complaint, "'[a]ppropriation' in this context means more than the mere coincidental use of a name that happens to be the same as that of the plaintiff." *Id*. at 1061-62.  *See also Maremont v. Susan Fredman Design Group, Ltd.*, 2011 U.S. Dist. LEXIS 140446, at *19 (N.D. Ill. Dec. 7, 2011) (reaching same finding under IRPA); *Berkos v. Nat'l Broad. Co.*, 161 Ill. App. 3d 476, 495 (1st Dist. 1987) ("The value of the plaintiff's name is not appropriated by mere mention of it, or by reference to it in connection with legitimate mention of his public activities. . . . No one has the right to object merely because his name or his appearance is brought before the public . . . ."); *C.B.C. Distrib. & Mktg. Major League Baseball Advanced Media, L.P.*, 443 F. Supp. 2d 1077, 1088 n.15, 1089

(E.D. Mo. 2006) (stating that "not all uses of another's name are tortious . . . [r]ather a name must be used as a *symbol of* the plaintiff's *identity* in a right of publicity action" because "identity is a critical element of the right of publicity") (emphasis in original).

Here, Plaintiff alleges that BeenVerified served her name in the Sponsored Link, but she fails to tie that to her identity.[6] *See Pesina v. Midway Mfg. Co.*, 648 F. Supp. 40, 42 (N.D. Ill. 1996) (noting that "the plaintiff alleging unauthorized use of his likeness must show that the likeness was recognizable"); *Restatement (Third) of Unfair Competition* § 46 cmt. D ("If the appropriation consists of the use of a name, for example, the name as used by the defendant must be understood by the audience as referring to the plaintiff.").

Plaintiff fails to claim an ordinary, reasonable viewer would tie the mere mention of "Nicole Vinci" in a Sponsored Link to Plaintiff's identity. Indeed, "[s]ince many persons have the same name, mere name-sameness alone should not be sufficient proof of identification. There must be some 'plus factors' in the context of defendant's use which support an identification of plaintiff." J. Thomas McCarthy, *The Rights of Privacy and Publicity* § 4.49 (2016 ed.). Plaintiff pleads no "plus factors" linking the Sponsored Link to her identity. Plaintiff does not even allege identification, and she therefore fails to plead the elements of a claim under IRPA.

Moreover, Plaintiff does not suggest (nor could she) that the simple statement that "We Found Nicole Vinci" constitutes her endorsement of BeenVerified. As the Seventh Circuit stated in *Toney v. L'Oreal USA, Inc.*, "[t]he basis of a right of publicity claim concerns the message— whether plaintiff endorses, or appears to endorse the product in question." 406 F.3d 905, 910 (7th Cir. 2005); *see also Maloney v. T3Media, Inc.*, 94 F. Supp. 3d 1128, 1137 n.3 (C.D. Cal. 2015) (stating that Seventh Circuit "rightly observed" that endorsement is basis of right of

---

[6] Plaintiff claims the Data Screen reflects additional details about Nicole Vinci. (Compl. ¶ 25.) As noted above, the Data Screen is several clicks removed from the Sponsored Link, and Plaintiff's claim is limited to "paid search engine advertisements" as allegedly shown in the Sponsored Link.

7

publicity claim). The legislative history of IRPA shows that legislators viewed the endorsement element as crucial. *See* 90th Ill. Gen. Assem. May 21, 1998, at 7-8 (during discussion of IRPA, examples of prohibited conduct included putting picture of individual on bus and indicating he endorsed particular brand of hair tonic and stating that Speaker Madigan endorsed food chain's cheeseburger with extra spicy chili). The statement at issue contains no indication that Plaintiff subscribes to BeenVerified, that she likes BeenVerified, that she finds BeenVerified helpful, or any other representation about her views on the nature of BeenVerified's products and services. Far from being an endorsement, the inclusion of a name in the Sponsored Link is no more than a sample of the content in the underlying Reports and does not meet the "commercial purpose" requirement in IRPA. In that regard, this situation is similar to the *Thompson* case. In that case, Getty Images was using sample images to advertise photos in a stock photo database, and the court stated it was "unpersuaded that showing a buyer a photograph of a person that she is considering whether to buy qualifies as a 'commercial purpose' as the IPRA [sic] uses that term." 2013 U.S. Dist. LEXIS 91828, at *6. Without any implication element of endorsement, Plaintiff cannot plausibly state a right of publicity claim.

    **B. BeenVerified's alleged activity falls under IRPA exemptions for books and non-commercial uses**

Even if Plaintiff could satisfy the basics of an IRPA claim, Plaintiff cannot overcome the exemptions in IRPA. The statute's reach is highly constrained, and IRPA carves out several types of content from liability. *See* 765 ILCS 1075/35(b) (setting forth five categories of exemptions). Furthermore, if the underlying content is protected, so is the advertising for that content. *See id*. at (b)(4). The IRPA exemptions largely mirror the types of First Amendment-protected content that have traditionally been exempt from liability under common-law misappropriation theories. *Collier v. Murphy*, 2003 U.S. Dist. LEXIS 4821, at *8 (N.D. Ill. Mar

8

26, 2003) (noting that exemptions help avoid "serious First Amendment problems"). Therefore, exemptions should be construed broadly. *See, e.g.*, *Dillinger, LLC v. Elec. Arts, Inc.*, 795 F. Supp. 2d 829, 836 (S.D. Ind. 2011) (stating that "interpreting 'literary works' [exemption in Indiana's right of publicity statute] broadly would effectuate the General Assembly's obvious attempt to avoid potential constitutional infirmities with the statute").

Relevant here are the exemptions for books and for the use of an individual's identity for a non-commercial purpose. 765 ILCS 1075/35(b)(1) and (b) (2). First, the Reports consist of classic directory information—names, addresses, telephone numbers, and, in some instances, information regarding criminal records. (Compl. ¶ 1; BeenVerified "Fact Sheet.") A Northern District of Illinois court recently looked at a similar type of directory in *Vrdolyak v. Avvo, Inc*. 2016 U.S. Dist. LEXIS 123578 (N.D. Ill. Sept. 12, 2016). Avvo publishes an online database of attorneys that features a profile page for each attorney. *Id*. at *2. The profile pages include "information gleaned from public records such as bar admissions and other court or regulatory records" as well as "the attorney's name, education, address, phone number, and practice area"— essentially BeenVerified for attorneys. *Id*. Accordingly, Avvo argued, and the court agreed, that its listings were simply a computerized version of the paper "yellow pages" directory. *Id*. at *7-9. BeenVerified's Reports and services are also properly analogized to traditional paper and ink directories, although BeenVerified's listings are probably more akin to the traditional "white pages" directories. Accordingly, BeenVerified's Reports are digital versions of a "book" that falls under paragraph (b)(1) of the IRPA exemptions.

Similarly, the information in the Reports involves the "use of an individual's identity for non-commercial purposes." 765 ILCS 1075/35(b)(2). Protection for non-commercial speech extends to directory information. In the *Dex Media* case, the court emphasized that it is "readily

9

apparent that telephone listings and community information contained in the directory constitute noncommercial speech." *Dex Media West, Inc. v. City of Seattle*, 696 F.3d 952, 957 (9th Cir. 2012). Sale of the content pursuant to a subscription model (as BeenVerified sells the Reports) does not render noncommercial speech commercial. "If the result were otherwise, then even an editorial in The New York Times would constitute commercial speech because the newspaper seeks subscribers through advertisements." *Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n*, 149 F.3d 679, 685 (7th Cir. 1998) ("A speaker's publication does not lose its status as protected speech simply because the speaker advertises the publication."). BeenVerified's content is exempt from the strictures of IRPA under the (b)(2) exemption.

Of course, Plaintiff is not complaining about the underlying Reports. Plaintiff's focus on the Sponsored Link rather than the Reports suggests a tacit admission that the Reports are, as demonstrated above, exempt under IRPA. Plaintiff instead complains about the use of her name in the Sponsored Link, which she alleges acts as an advertisement for the Reports. IRPA exempts that use, too. IRPA does not apply to "promotional materials, advertisements, or commercial announcements for a use described under paragraph (1), (2), or (3) of this subsection." 765 ILCS 1075/35(b)(4). If the underlying use is protected (as it is here under the (b)(1) and (b)(2) exemptions), then advertising for that use is protected, too, under the (b)(4) exemption. As a matter of law, IRPA does not apply to either the content of the Reports or to the content of the Sponsored Link's advertisement of the Reports.

II. **Plaintiff Cannot Overcome Insurmountable Constitutional Barriers**

    A. **Regardless of the applicability of IRPA, the content is protected under the First Amendment**

Separate from IRPA, BeenVerified's Reports are also subject to Constitutional protection. The *Avvo* court recently re-affirmed this bedrock principle. *See* 2016 U.S. Dist.

LEXIS 123578, at *9 (stating that yellow pages directory "receives First Amendment protection"); *see also Dex Media*, 696 F.3d at 962 ("publications like yellow pages directories . . . receive full First Amendment protection"). According to the *Dex Media* court, directories occupy the same constitutional space as newspapers and magazines. *Id*. at 965 (stating that "we do not see a principled reason to treat telephone directories differently from newspapers, magazines, television programs, radio shows, and similar media"). BeenVerified provides individuals' names, phone numbers, and email addresses. As the modern analog to the familiar white pages and yellow pages of recent vintage, BeenVerified's Reports are protected by the First Amendment.

Because the underlying content of the Reports is subject to First Amendment protection, the Sponsored Link is protected as well. *See Montana v. San Jose Mercury News, Inc.*, 34 Cal. App. 4th 790, 797 (Ct. App. 1995) (finding that First Amendment protected posters at issue "because a newspaper has a constitutional right to promote itself by reproducing its originally protected articles or photographs"); *Cher v. Forum Int'l, LTD*, 692 F.2d 634, 639 (9th Cir. 1982) ("Constitutional protection extends to the truthful use of a public figure's name and likeness in advertising which is merely an adjunct of the protected publication and promotes only the protected publication."). If the underlying material is subject to First Amendment protection, so too is the advertising for that content.

**B. Plaintiff's interpretation of IRPA would violate the Constitution**

Plaintiff seeks to apply IRPA in a way that strips the Reports and the Sponsored Link of their Constitutional protection. It is a fundamental precept that courts should seek to interpret statutes in a manner that will avoid constitutional infirmity. *See Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988) (stating that "where

11

an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress"). As demonstrated above, Plaintiff's attempt to apply IRPA in an unprecedented, expansive manner (indeed, to make an unprecedented claim under any state's right of publicity law) would create just such a grave constitutional question, and thus Plaintiff's radical claim should not survive.

In seeking to prohibit the use of information from the Reports in advertising for the Reports, Plaintiff seeks a content-based restriction on speech. Such restrictions are subject to strict scrutiny. They are "presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2226 (2015). The application of IRPA to BeenVerified's Sponsored Links would not survive strict scrutiny. BeenVerified's use of dynamic keyword insertion ("We found Nicole Vinci") to notify internet searchers of the potential to find information about people named "Nicole Vinci" has no impact on Plaintiff's ability to earn a livelihood or "reap the reward of [her] endeavors." *Zacchini v. Scripps-Howard Broad. Co.*, 433 U.S. 562, 573 (1977). In contrast, prohibiting BeenVerified from using names in Sponsored Links to notify internet searchers about the potential availability of information about people with that name unduly burdens BeenVerified and impedes the internet searcher's efforts.

### C. Plaintiff impermissibly attempts to apply IRPA outside of Illinois and violates the "Dormant Commerce Clause"

Plaintiff's claim also fails because she has not alleged the IRPA violation occurred within Illinois. Applying IRPA extraterritorially would violate both Illinois law and the U.S. Constitution. Illinois adheres to a rule that a "statute is without extraterritorial effect unless a clear intent in this respect appears from the express provisions of the statute." *Avery v. State*

*Farm Mut. Auto Ins. Co.*, 216 Ill. 2d 100, 184-85 (2005). Nothing on the face of IRPA conveys an intent to apply it extraterritorially. Plaintiff must demonstrate that the alleged IRPA violation occurred *within* Illinois, i.e., "*primarily and substantially*" within the state. *Avery*, 216 Ill. 2d at 186 (emphasis added). *See also Landau v. CAN Fin. Corp.*, 381 Ill. App. 3d 61, 65 (2008). The only Illinois connection alleged is that plaintiff is an Illinois resident. (Compl. ¶ 7.) BeenVerified is a Delaware corporation located in New York. (Compl. ¶ 8.) Plaintiff pleads no facts to demonstrate that the conduct (e.g., name searches, dynamic keyword insertion or display of the results) occurred in Illinois.

Plaintiff's claim also runs afoul of the dormant Commerce Clause, which "precludes the application of a state statute" in a manner that has "the practical effect of . . . control[ling] conduct beyond the boundaries of the State," "whether or not the commerce has effects within the State"—preventing "inconsistent legislation arising from the projection of one state regulatory regime into the jurisdiction of another State." *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 336-37 (1989). For these reasons, Plaintiff's claim fails as a matter of law.[7]

### III. Section 230 of the CDA Bars Plaintiff's Claim

Under Section 230 of the CDA, BeenVerified cannot be liable for content it did not create, such as the user-generated content in the ads at issue here. Section 230 states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). An information content provider is "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive

---

[7] BeenVerified adopts and incorporates by reference the arguments of Spokeo, Inc. in Section III of its memorandum of law in support of its motion to dismiss in the related case pending before this Court, *Vinci v. Spokeo, Inc.*, No. 1:17-cv-01519 (Dkt. 22).

computer service." *Id.* § 230(f)(3). Section 230 provides that BeenVerified cannot be considered the publisher or speaker of content from another, and it preempts state law to the contrary.[8]

Seventh Circuit case law supports application of Section 230 immunity. For example, in *Doe v. GTE Corp.*, the court reasoned that an entity is eligible for immunity "as long as the information came from someone else" but loses the benefit of Section 230 immunity "if it created the objectionable information." 347 F.3d 655, 660 (7th Cir. 2003). *See also Chi. Lawyers' Comm. for Civil Rights Under Law, Inc. v. Craigslist, Inc.*, 519 F.3d 666, 671-72 (7th Cir. 2008) (concluding that Craigslist "is not the author of the ads and could not be treated as the 'speaker' of the posters' words, given § 230(c)(1)").

Here, BeenVerified is immune from liability under Section 230 because, as Plaintiff admits, the ads appear only when a person conducts a search of a name, and the allegedly objectionable content—the name—is provided by the person who does the search. (*See* Compl. ¶ 21, "search engines like Google and Bing . . . display [BeenVerified's] advertisements when a person searches for a person's name"; Compl. ¶ 23, the ads employ "a method called Dynamic Keyword Insertion" which "plug[s] in the first and last name of any person searched into [BeenVerified's] otherwise generic advertisement.") In other words, the search engine user triggers the Sponsored Link and its allegedly objectionable content. BeenVerified and the search engines are merely passive transmitters of information provided by others.

---

[8] The Seventh Circuit has yet to consider whether the right of publicity—which has its origins as a common law privacy tort—is preempted under § 230(e)(3) (providing that "no liability may be imposed under any State or local law that is inconsistent with this section") or instead implicates the intellectual property exception under § 230(e)(2) (providing that "[n]othing in this section shall be construed to limit or expand any law pertaining to intellectual property"). The Ninth Circuit, however, has determined that Section 230 immunity applies to a right of publicity claim. *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1119 (9th Cir. 2007) (the exception for "intellectual property" claims in (e)(2) should be construed to mean "federal intellectual property").

Courts have deemed other auto-generated search engine tools immune under Section 230. For example the court in *Stayart v. Google Inc*. held that search terms auto-generated by a search engine do not remove that search engine from the CDA's broad protection because such auto-generated terms "indicate[] only that other websites and users have connected plaintiff's name" with certain terms. 783 F. Supp. 2d 1055, 1056-57 (E.D. Wis. 2011), *aff'd*, 710 F.3d 719 (7th Cir. 2013) (finding that plaintiff's allegation that Google suggested the plaintiff's name and name of sexual dysfunction drug—when plaintiff Googled her name did not allow plaintiff to "get around [the CDA] obstacle"); *see also Dowbenko v. Google Inc.*, 582 F. App'x 801, 805 (11th Cir. 2014) (finding Section 230 immunity despite "allegation that Google manipulated its search results to prominently feature the article at issue"). Likewise, the use of dynamic keyword insertion here is not enough to remove BeenVerified from the CDA's broad protection because the display of auto-generated ads is triggered only through user-generated searches. Such involvement is insufficient to find BeenVerified liable as a content provider under Section 230.

## CONCLUSION

For the reasons set forth herein and in the accompanying Motion, Defendant BeenVerified respectfully requests that this Court dismiss the Complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) and award BeenVerified its reasonable attorney's fees, costs, and expenses relating to this action pursuant to 765 ILCS 1075/60.

Dated: April 20, 2017                                  Respectfully submitted,

                                                                                      BEENVERIFIED, INC.

                                                                                       By:   /s/ Steven L. Baron
                                                                                            One of its attorneys

Steven L. Baron (ARDC #6200868)
Brendan J. Healey (ARDC #6243091)
MANDELL MENKES LLC
1 North Franklin Street, Suite 3600
Chicago, IL 60606
(312) 251-1000

Jon M. Talotta (*Pro Hac Vice* Application to be filed)
HOGAN LOVELLS US LLP
Park Place II, Ninth Floor
7930 Jones Branch Drive
McLean, VA 22102
(703) 610-6100

*Counsel for Defendant BeenVerified, Inc.*